```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION
```

ATLANTIC RECORDING CORP.,     )
et al.,                       )
                              )
          Plaintiffs,         )
                              )
     vs.                      )     No. 4:06-CV-1708 CEJ
                              )
JENNA RALEIGH,                )
                              )
          Defendant.          )

### MEMORANDUM AND ORDER

This matter is before the Court on the plaintiffs' motion to dismiss defendant's counterclaims, and on the motion of defendant to join the Recording Industry Association of America as a counterclaim defendant. The issues are fully briefed.

**I. Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-

pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

**II. Background**

Plaintiffs are copyright owners or licensees of exclusive rights with respect to certain copyrighted sound recordings. They allege that defendant Jenna Raleigh has used an online media distribution system to download the copyrighted recordings, to distribute those recordings to other users of the system, and/or to make the copyrighted recordings available for distribution to others without the permission or consent of plaintiffs.

Defendant denies that she is responsible for the allegedly infringing activity plaintiffs have traced to an Internet Protocol (IP) address that they have linked to her. She asserts that plaintiffs' attempt to seek relief under the Copyright Act constitutes extortion and wire and mail fraud within the terms of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq*. Defendant further proposes to be named class representative for a class of all persons falsely accused of

2

illegally downloading copyrighted sound recordings. Finally, defendant asserts that the Recording Industry Association of America (RIAA), a trade group, is a necessary and indispensable party to this action, and she moves to join RIAA as a counterclaim defendant.

In their motion to dismiss defendant's counterclaims, plaintiffs assert that the counterclaims are premised on privileged settlement communications and are subject to immunity under the Noerr-Pennington doctrine. See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); and United Mine Workers v. Pennington, 381 U.S. 657 (1965). Consequently, plaintiffs assert, the counterclaims are barred as a matter of law and should be dismissed. Plaintiffs further contend that defendant has failed to allege the essential elements of any of her claims of relief, and so her counterclaims fail as a matter of law. Plaintiffs deny that the RIAA is a necessary party under Rule 19(a), Fed. R. Civ. P., and they maintain that defendant has no viable counterclaim against the RIAA.

**III. Discussion**

Defendant brings the following counterclaims: racketeering (Count I) and conspiracy (Count II) under RICO, 18 U.S.C. § 1962; fraudulent misrepresentation (Count III); prima facie tort (Count IV); and conspiracy (Count V). Defendant also asks the Court to certify a class of all persons falsely accused of illegally downloading copyrighted sound recordings and to appoint plaintiff

as the class representative.  In the alternative, defendant moves for leave to amend the counterclaim.

Defendant's counterclaims purport to describe a conspiratorial scheme of racketeering and extortion by the RIAA and plaintiffs. Defendant alleges that the RIAA and recording companies have engaged in an organized campaign by filing lawsuits against "Doe" defendants identified only by IP addresses, engaging in *ex parte* discovery to identify the "Doe" defendants, notifying them of the alleged violations of the Copyright Act, and demanding a settlement.

Defendant describes the above procedure as "an organized effort and pattern of:

(1) using the mails to send threatening and intimidating letters designed to instill fear of litigation and economic loss and harm; and
(2) using the mails to send letters containing false and misleading information; and
(3) using the telephone to make settlement demands and, through a 'Settlement Information Line,' to arrange settlements and collect monies from innocent individuals; and
(4) filing and dismissing frivolous lawsuits instituted solely to obtain *ex parte* discovery and intended to circumvent the requirements of federal copyright law."

Defendant also accuses plaintiffs of forming an association for the purpose of attempting to extort money and using misrepresentations, threats, fear of economic loss, and lawsuits in order to obtain cash settlements.  Finally, defendant alleges that plaintiffs have demanded "outrageous amounts of money to settle their baseless claims" under the Copyright Act. Id. at 15.

**Noerr-Pennington Immunity**

Defendant's counterclaims are based on plaintiffs' investigation of suspected copyright infringement, the filing of a lawsuit against her claiming infringement, and communicating their settlement offer and threatening further litigation proceedings. Plaintiffs argue that such claims are barred by the Noerr-Pennington doctrine.

The Noerr-Pennington doctrine immunizes those who petition the government for redress of grievances from antitrust liability. Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 56 (1993), citing Noerr, *supra*, 365 U.S. 127; and Pennington, *supra*, 381 U.S. 657. This immunity applies when citizens seek relief in the courts. Id., citing California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). See also Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1080 n 4 (8th Cir. 1999).

Under the Noerr-Pennington doctrine, "participation in the judicial process cannot be asserted as a basis for civil antitrust liability" unless it is merely a "sham cover" for an attempt to directly interfere with a competitor's business. Central Telecommunications, Inc. v. TCI Cablevision, Inc., 610 F.Supp. 891 (W.D. Mo. 1985). "[I]n the litigation context, not only petitions sent directly to the court in the course of litigation but also 'conduct incidental to the prosecution of the suit' is protected by the Noerr-Pennington doctrine." Sosa v. DirecTV, 437 F.3d 923, 934 (9th Cir. 2006), quoting Columbia Pictures Indus.,Inc. v. Prof'l

Real Estate Investors, Inc., 944 F.2d 1525, 1528-29 (9th Cir. 1991), aff'd 508 U.S. 49 (1993).

The Noerr-Pennington doctrine arose in the antitrust context, but it is applied outside that context. See, e.g., Central Telecommunications, Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 717 n 7 (8th Cir. 1986) (doctrine "is equally applicable to many types of claims which seek[] to assign liability on the basis of [a litigant's] exercise of its first amendment rights.").[1] If the Noerr-Pennington doctrine applies to plaintiffs' filing of this action and to their attempts to settle their claims with defendant, the plaintiffs are immune from liability for those activities, and the defendant's counterclaims must be dismissed. Defendant, however, alleges that the plaintiff's claims fall within the "sham" litigation exception to the Noerr-Pennington doctrine.

**Sham Litigation Exception**

Noerr-Pennington immunity does not extend to "sham" litigation. Prof'l Real Estate Investors, *supra*, 508 U.S. at 60. A lawsuit is a "sham" if it is (1) objectively baseless such that no reasonable litigant could realistically expect success on the merits, and (2) subjectively motivated by bad faith. Id.

---

[1] See also NAACP v. Claiborne Hardware, Co., 458 U.S. 886 (1982) (boycott of white merchants to secure compliance with demands for racial equality); and Hufsmith v. Weaver, 817 F.2d 455, 458-59 (8th Cir. 1987), citing In re IBP Confidential Business Documents Litigation, 755 F.2d 1300 (8th Cir. 1985) (recognized the doctrine's application to claims of "tortious interference with business and to alleged conspiracies under 42 U.S.C. § 1983.").

6

"The existence of probable cause to institute legal proceedings precludes a finding that an anti-trust litigant has engaged in sham litigation." Id. at 62. "Probable cause to institute civil proceedings requires no more than a reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'" Id., quoting Hubbard v. Beatty & Hyde, Inc., 178 N.E.2d 485, 488 (1961) (additional citation omitted). If there is no factual dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law. Id. at 63. The Professional Real Estate Investors Court found probable cause existed when the respondent's copyright infringement action was warranted by existing law. Id. at 65.

Under the Copyright Act, a person who violates the exclusive rights of a copyright owner is an infringer of the copyright or right of the owner. 17 U.S.C. § 501(a). The legal or beneficial owner of an exclusive right under a copyright "is entitled . . . to institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). Plaintiffs are the holders or exclusive licensees of the copyrighted sound recordings, a fact which defendant does not dispute. As such, plaintiffs have a statutory right to bring suit against an alleged infringer.

Defendant disputes that the plaintiffs have probable cause to bring suit against her. She denies that she engaged in any infringing activity. Defendant does not deny that plaintiffs linked the allegedly infringing activity to the IP address of a computer to which she had access. However, she states that she

7

resided in a sorority house and owned a computer that was not password-protected, and thus any one of the house's residents could have used her computer to engage in unlawful infringement.

The Court finds that defendant's denial that she personally engaged in any wrongdoing is not sufficient to bar this action by plaintiffs. Plaintiffs claim they have linked infringing activity to an IP address for a computer to which defendant admits she had access. While the facts have not been determined at this early stage of the lawsuit, plaintiffs are entitled to present evidence in support of their claim. Whether they can prevail in the face of defendant's denials is an issue that will be decided after the parties have had the opportunity to conduct full discovery. The Court finds that the plaintiffs' action does not fall within the "sham" litigation exception to the Noerr-Pennington doctrine.

**Conduct Incident to Litigation**

Defendant objects to the plaintiffs' filing of the action against a "Doe" defendant linked to an IP address, and the subpoena of the Internet service provider to determine the identity of the user of that address.

Under 17 U.S.C. § 512(h)(1), a copyright owner "may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer." Plaintiffs thus are entitled under the Copyright Act to engage in *ex parte* discovery and bringing suit against "John Doe" defendants.

Defendant's contention that the "Doe" lawsuits are "frivolous" and "intended to circumvent the requirements of federal copyright

law" is unwarranted, because the procedure is in fact a provision of federal copyright law.

Defendant also objects to the amount of damages requested by plaintiffs as "outrageous." The Court finds that, as a matter of law, any damages within the statutorily-authorized range of $750 to $30,000 per each infringed work cannot be deemed outrageous. See 17 U.S.C. § 504(c)(1).

Finally, defendant characterizes the plaintiffs' settlement demand letters as extortion, a claim that is discussed below. The Court observes, however, that a settlement demand is a normal activity incident to litigation, and as such, plaintiffs are immune from liability for sending settlement demand letters under the Noerr-Pennington doctrine. The Court also notes that settlement can be a "just, speedy, and inexpensive" determination of an action, see Rule 1, Fed. R. Civ. P., and as such, demands for settlement are authorized by the Federal Rules.

The Court concludes that the plaintiffs' filing of lawsuits against "Doe" defendants, *ex parte* discovery, efforts to settle their claims with defendant, and request for damages within the statutory range are conduct incident to the underlying litigation. This action is not "sham" litigation. As such, plaintiffs are immune from liability for these activities under the Noerr-Pennington doctrine. The counterclaims thus fail to state a claim upon which relief can be granted, and the Court will dismiss them.

**RICO Claims**

Defendant claims that plaintiffs have made threats of litigation and settlement demands that contain "misrepresentations." Defendant characterizes these actions as extortion and racketeering under RICO, 18 U.S.C. § 1961 *et seq.*

Title 18, Section 1962©, of the United States Code provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Racketeering activity is defined in 18 U.S.C. § 1961 to include, *inter alia*, offenses under 18 U.S.C. §§ 1951 (relating to interference with commerce, robbery, or extortion) and 1952 (relating to racketeering). A pattern of racketeering activity requires at least two acts of racketeering activity in a ten-year period. 18 U.S.C. § 1961(5). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). RICO also prohibits the use of mail or any facility in interstate commerce (e.g., telephone) with intent to promote, manage, carry on or facilitate unlawful activity. 18 U.S.C. § 1952(a).

Plaintiffs argue that threats of litigation and demands for settlement do not constitute extortion within the meaning of RICO. The Court agrees. The Eighth Circuit has specifically addressed

10

this issue, and it held that even a groundless, bad-faith threat to sue does not instill "'fear' within the meaning of the criminal statute prohibiting extortion." I.S. Joseph Co., Inc. v. J. Lauritzen A/S, 751 F.2d 265, 267 (8th Cir. 1984).

A majority of federal jurisdictions have held that a threat to file a lawsuit unless a settlement demand is accepted, regardless of whether the threat was made in good faith, is not a wrongful threat within the meaning of extortion statutes. Rendelman v. State, 927 A.2d 468, 479-80 (Md. 2007) (citations omitted) (construing Maryland's extortion statute, which contains the same "economic injury" language as RICO). "A civil action is a lawful means for people to have their private disputes, including financial disputes, decided." Id. at 481. A typical demand letter "serves notice to a potential defendant that the potential plaintiff plans to pursue litigation, unless the underlying dispute can be privately resolved, by an agreement to pay money or other legitimate consideration. . . . Settlement demands of this sort are overtures to negotiation, not threats to inflict economic injury." Id. Defendant's counterclaims based on RICO thus fail to state a claim for extortion and racketeering within the meaning of that statute, providing an additional ground for dismissal of those claims.

**Motion to Join RIAA**

Defendant moves to join the RIAA as counterclaim defendants, claiming that the RIAA is a necessary and indispensable party for the adjudication of defendant's RICO claims. Because the Court has

11

found that the RICO claims fail to state a claim upon which relief can be granted, the motion to join the RIAA is moot and will be denied.

**Leave to Amend**

The defendant seeks leave to amend her counterclaims in the event the plaintiffs' motion is denied. Because defendant has not indicated the substance of any proposed amendments, the Court will deny the request.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to dismiss defendant's counterclaims [# 25] is **granted.** The counterclaims are **dismissed for failure to state a claim**.

**IT IS FURTHER ORDERED** that defendant's motion for leave to join the Recording Industry Association of America as a counterclaim defendant [# 18] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of August, 2008.